**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Daniel D Andrews, et al.,

Plaintiffs,

v.

Wilson Electric Services Corporation, et al.,

Defendants.

No. CV-24-00995-PHX-DJH

**ORDER**

On December 11, 2025, Defendants Wilson Electric Services Corp. ("WESC"), Wilson Electric Services Corp. Plan Committee (the "Committee"), Todd Klimas ("Klimas"), Wesley McClure ("McClure"), Terry Oakes ("Oakes"), Scott Smith ("Smith"), Jeri Kendle ("Kendle"), and Rick Tometich ("Tometich") (collectively, "Defendants") filed a Motion to Dismiss Plaintiffs' Third Amended Complaint ("TAC") (Doc. 166). Plaintiffs Daniel Andrews and Matthew Baker (collectively, "Plaintiffs") filed an Opposition (Doc. 170) to Defendants' Motion, and Defendants thereafter filed a Reply (Doc. 173).[1]  Without leave of Court, Plaintiffs additionally and subsequently, filed three Notices of Supplemental Authority in support of their Opposition.  (*See* Docs. 175, 177, 179).[2]

---

[1] Also pending in this case are Defendants' Motion to Decertify the Class (Docs. 129, 156), Plaintiffs' Motion for Leave to File Sur-Reply to Defendants' Motion to Decertify (Doc. 150), and Defendants' Motion to Supplement the Motion to Decertify (Doc. 181).  These matters will be addressed by separate orders.

[2] These Notices and the corresponding Responses (Docs. 176, 178, 180) culminated in ten additional pages of briefing on the present matter.

## I.    Background

This matter arises under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*  Plaintiffs, on behalf of themselves and other class members, generally claim that Defendants imprudently invested their retirement funds.  (*See generally* Doc. 154).  Plaintiffs are current or former employees of WESC, and Defendants Klimas, McClure, Oakes, Smith, Kendle, Tometich (collectively, "Individual Defendants") served on WESC's Board of Directors during the relevant time period.  (*Id.* at ¶¶ 3–12).

In 2005, WESC established an employee stock ownership plan (the "WESC ESOP") "to provide retirement benefits to employees." (*Id.* at ¶ 17).  An employee stock ownership plan ("ESOP") is "a type of pension plan that invests primarily in the stock of the company." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 412 (2014).  The WESC ESOP has two types of assets: 1) WESC stock and 2) other investments, known as the Other Investments Account ("OIA"). (Doc. 154 at ¶ 18).

The OIA accumulated a large balance, averaging $11.2 million between 2018 and 2022.  (*Id.* at ¶ 21).  However, "Defendants kept the OIA funds invested exclusively in bank deposit and money market accounts during all or most of the subject period," yielding negligible returns.  (*Id.* at ¶ 25).  Plaintiffs allege that these investments caused "the OIA funds depreciated in real value, and the retirement savings of ESOP participants effectively shrunk." (*Id.* at ¶ 26).  Plaintiffs claim that the average annual returns of stock investments illustrate the small returns yielded by investing in cash equivalents.  (*Id.* at ¶¶ 30–33).  Additionally, the "allocation of 100% of the OIA balance to cash equivalents and short-term treasuries is substandard among fiduciaries managing similar OIA balances under similar circumstances."  (*Id.* at ¶ 44).  The WESC ESOP's "purpose is to provide a retirement benefit that will grow over time, not to preserve the value of the principal amount invested." (*Id.* at ¶49).

Plaintiffs brought suit against Defendants on May 1, 2024 (Doc. 1), alleging that "Defendants violated ERISA fiduciary standards set forth in 29 U.S.C. § 1104(a)(1) by failing to prudently invest the OIA in a manner consistent with the investment objectives

of the ESOP and its participants." (*Id.* at ¶ 84). Following two other amendments of their operative complaint, Plaintiffs filed their TAC on November 20, 2025, bringing a claim for breach of the duty of prudence and failure to monitor against Defendants. (Doc. 154 at ¶¶ 82–88). Defendants now move to dismiss the TAC in its entirety.

## II.    Legal Standard

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a claim. *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011). Complaints must make a short and plain statement showing that the pleader is entitled to relief for their claims. Fed. R. Civ. P. 8(a)(2). This standard does not require "'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Dismissal of a complaint for failure to state a claim may be based on either the "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). In reviewing a motion to dismiss, courts will "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But courts are not required "to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

### III.　Discussion

Plaintiffs only plead a claim that Defendants breached their fiduciary duty of prudence in violation of 29 U.S.C. § 1104(a)(1).  Under ERISA, a fiduciary must act with the "care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."  29 U.S.C. § 1104(a)(1)(B).  "To state a claim for breach of fiduciary duty under ERISA, a plaintiff must allege that (1) the defendant was a fiduciary; and (2) the defendant breached a fiduciary duty; and (3) the plaintiff suffered damages."  *Bafford v. Northrop Grumman Corp.*, 994 F.3d 1020, 1026 (9th Cir. 2021).  Here, Plaintiffs allege that Defendants were WESC fiduciaries who breached their duties "by failing to prudently invest the OIA in a manner consistent with the investment objectives" of the WESC ESOP and "by failing to monitor the Board / Committee's management of the Plan and failing to ensure that the Committee was investing the OIA with the care, skill, and diligence appropriate under the circumstances." (Doc. 153 at ¶¶ 83–85).  These alleged breaches caused Plaintiffs and class members "injury in the form of lost investment earnings[.]"  (*Id.* at ¶ 86).

Defendants' Motion argues the TAC should be dismissed because (1) a recent Ninth Circuit opinion forecloses Plaintiffs' theory of liability; (2) the ESOP is exempted from the duty to diversify; (3) the TAC alleges that Defendants acted prudently and imprudence cannot be inferred from the other ESOPs alleged in the TAC; (4) Plaintiffs fail to allege that the Individual Defendants are fiduciaries; and (5) Plaintiffs' failure to monitor and co-fiduciary liability claims are derivative.  (*See* Doc. 166 at 10–22).  The Court will assess the merits of these arguments below.

#### A.　Impact of *Anderson v. Intel Corporation Investment Policy Committee*

Defendants primarily contend that Plaintiffs' theory of liability has been foreclosed by the Ninth Circuit opinion in *Anderson v. Intel Corp. Investment Policy Committee*, 137 F.4th 1015 (9th Cir. 2025).  However, the Court is not convinced.  Upon review of *Anderson*, Defendants overstate the import of the case and its impact on the present matter.

The *Anderson* court considered whether the district court properly dismissed the plaintiff's breach of the duty of prudence claim. There, the plaintiff claimed that "the decision to invest in hedge funds and private equity funds caused [the defendant] funds to underperform other funds and to incur higher fees." *Id.* at 1022. Acknowledging that violations of the prudence standard can be shown through direct or circumstantial allegations, the court explained that the plaintiff "made no direct allegation about [the defendant's] investment-selection methods, and he attempts to show a breach of the duty of prudence only through the circumstantial route." *Id.* Under these circumstances, the court held that "to the extent a plaintiff asks a court to infer that a fiduciary used improper methods based on the performance of the investments…he must compare that performance to funds or investments that are meaningfully similar." *Id.* at 1023; *see also Johnson v. Carpenters of W. Wash. Bd. of Trustees*, 824 F. Supp. 3d 1103, 1108 (W.D. Wash. 2026) ("The *Anderson* court established the 'meaningful benchmark' requirement that applies when a plaintiff attempts to plead circumstantial factual allegations 'relying on a theory that a prudent fiduciary in like circumstances would have selected a different fund based on the cost or performance of the selected fund.' ") (quoting *Anderson*, 137 F.4th at 1022). The *Anderson* court upheld the dismissal of the plaintiff's breach of the duty of prudence claim, stating that "the district court correctly determined that [the plaintiff] did not plausibly allege that [the defendant's] funds underperformed other funds with comparable aims." *Anderson*, 137 F.4th at 1022.

Defendants, however, liberally construe what constituted a holding in the Ninth Circuit's opinion. They state that "[t]he *Anderson* court held that, while a plaintiff can challenge 'decisions made to implement' an ERISA plan's risk-mitigation objective, a plaintiff cannot challenge a fiduciary's risk-mitigation objective itself." (Doc. 173 at 2 (emphasis omitted)). Yet, the *Anderson* opinion does not say as much, and, even if it did, Defendants do not address whether there is a stated risk-mitigation objective here. In *Anderson*, the court noted:

> [The defendant] clearly disclosed the aims of its funds. Disclosures for the

- 5 -

global diversified funds explained [the defendant's] risk-mitigation objective, noting that assets were allocated to "provide greater downside protection in faltering markets, with the tradeoff being slight underperformance in rallying ones, as has been the case in the current bull market." Disclosures for the target-date funds similarly made clear that the goal was to "reduce investment risk by investing in assets whose returns are less correlated to equity markets."

*Anderson*, 137 F.4th at 1023. Indeed, the other cases cited by the *Anderson* court to support the premise that "courts have routinely rejected claims that an ERISA fiduciary can violate the duty of prudence by seeking to minimize risk" concerned plans and funds that were advertised as and disclosed to be conservative. *See Pizarro v. Home Depot, Inc.*, 111 F.4th 1165, 1181 (11th Cir. 2024) ("Home Depot offered the stable value fund because *it was conservative, advertised it as conservative, and benchmarked it against a conservative metric.* Because the fund met the expectations set for it, the plaintiffs' breach-of-fiduciary-duty claim relying on comparisons to other, more aggressive benchmarks fail[s].") (emphasis added); *Ellis v. Fidelity Mgmt. Tr. Co.*, 883 F.3d 1, 10 (1st Cir. 2018) (rejecting an argument "that a plan fiduciary's choice of benchmark, *where such a benchmark is fully disclosed to participants*, can be imprudent by virtue of being too conservative") (emphasis added).

By contrast, the TAC states that the WESC ESOP was established "to provide retirement benefits to employees." (Doc. 154 at ¶ 17). And the WESC ESOP states that "[t]he purpose of this Plan is to enable participating Employees of the Company and of any participating affiliates to share in the growth and prosperity of the Company and to provide Participants with an opportunity to accumulate capital for their future economic security." (Doc. 167-1 at 6). Defendants do not identify any information establishing that a risk-minimization strategy was communicated to plan participants. Therefore, even under Defendants' reading of *Anderson*, dismissal of Plaintiffs' claim would not be warranted as it is not clear that Plaintiffs were made aware that any risk-mitigation strategy or objective existed. But, to reiterate, the Court rejects Defendants' view of *Anderson's* holdings and finds nothing in the case that categorically forecloses Plaintiffs' claim. *See also Moran v.*

*ESOP Comm. of the Aluminum Precision Prods., Inc.*, 2026 WL 235573, at \*4–5 (C.D. Cal. 2026) (denying judgment on the pleadings as to a similar imprudence claim as here post-*Anderson*); *Dawson-Roberts v. Norman S. Wright Mech. Equip. LLC*, 2026 WL 1834788, at \*2–3 (N.D. Cal. 2026) (same).

### B.    Meaningful Benchmark

While the Court disagrees with Defendants' interpretation of *Anderson*, the case did make it clear that when an ERISA plaintiff relies "on a theory that a prudent fiduciary in like circumstances would have selected a different fund based on the cost or performance of the selected fund, that plaintiff must provide a sound basis for comparison." *Anderson*, 137 F.4th at 1022 (quoting *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822 (8th Cir. 2018)) (internal quotation marks omitted). On this basis, Defendants argue that the allegations regarding other ESOPs in the TAC are insufficient to provide "any meaningful benchmark against which the Court can make effective comparisons." (Doc. 166 at 18).

Initially, the Court is not persuaded that Plaintiff has not given a sound basis for comparison. In relevant part, the TAC alleges:

> When ESOPs accumulate excess funds not invested in employer stock, prudent ESOP fiduciaries invest the excess funds in assets that offer greater potential for long-term capital appreciation than cash equivalents.

> For example, fiduciaries of the Great Lakes Cheese Co., Inc. Employee Stock Ownership Plan kept approximately 95% of their plan's OIA assets invested in common stocks (directly or through pooled funds) during the subject period. The fiduciaries of the SCS Engineers Employee Stock Ownership Plan kept upwards of 60% of OIA funds invested in stocks (directly or through pooled funds), and most of the remaining OIA balance in real estate and bonds. These ESOPs only hold cash for limited periods before investing the funds pursuant to their overall long-term investment strategy.

> Defendants' allocation of 100% of the OIA balance to cash equivalents and short-term treasuries is substandard among fiduciaries managing similar OIA balances under similar circumstances. In 2022, there were 49 ESOPs that invested primarily in company stock, did not take participant contributions, and held between $5 and $15 million in OIA funds throughout the year. All but 11 of these ESOPs invested in stock, with their median allocation of OIA funds to stocks being 43%. Among this roughly 80% majority of prudently

managed ESOPs, the median allocation of OIA funds to cash and short-term treasuries was just 17%. Defendants' allocation of 100% of OIA funds to cash and short-term treasuries during the class period was thus far outside the norm.

(Doc. 154 at ¶¶ 42–44). As there is no requisite number of comparators, the other ESOPs referenced provide reasonable benchmarks that are at least sufficient to avoid dismissal.

Even more so, the TAC does not rely solely on an underperformance theory. Plaintiffs have done more than allege that Defendants "could have obtained better results…by choosing different investments." *Anderson*, 137 F.4th at 1021. The TAC alleges that the OIA was invested in a manner inconsistent with "the investment objectives of the [WESC ESOP] and its participants." (Doc. 154 at ¶ 84). As alleged, the purpose of the WESC ESOP was to provide a retirement benefit that grew over time, and the investment of all OIA funds into low-return cash equivalents is at odds with this purpose. (*See id.* at ¶¶ 17, 26–28, 34–36, 49). The courts, in *Moran* and *Dawson-Roberts*, determined that an alleged "mismatch" between an ESOP's assets and its purpose as a retirement plan "plausibly suggests an imprudent investment process." *Dawson-Roberts*, 2026 WL 1834788, at *2; *Moran*, 2026 WL 235573, at *8. This reasoning applies equally here.

To be sure, there are allegations in the TAC that compare the returns of cash and money market funds to those of the S&P 500 and Russell 2000. (*See* Doc. 154 at ¶¶ 29–31). However, construing the TAC favorably to Plaintiff, there are sufficient allegations in the TAC to support a claim for lack of prudence.

### C.      Duty to Diversify

Defendants next argue that Plaintiffs' claim fails because "ERISA specifically exempts ESOPs from the duty to diversify plan investments[.]" (Doc. 166 at 7). In support of their argument, Defendants cite *Trull v. Bd. of Trustees of McCreary Modern, Inc. ESOP*, 2025 WL 2803605 (W.D.N.C. Oct. 1, 2025).

In *Trull*, the plaintiff advanced substantially the same theory as here about excess cash holdings in the defendants' ESOP. *Id.* at *3. There, in dismissing the plaintiff's claim

for breach of fiduciary duty, the court determined that, because an ESOP fiduciary is not obligated under § 1104(a)(2) to diversify investments, the defendants' "were under no duty to diversify any part of the plan, let alone the cash buffer." *Id.* at *3–4. However, *Moran* and *Dawson-Roberts* have taken a contrary position to *Trull*, and the Court finds the *Moran* court's assessment of the exception to ERISA's diversification requirement more persuasive as "the *Trull* court didn't engage with the text of § 1104(a)(2), as the *Moran* court did[.]" *Dawson-Roberts*, 2026 WL 1834788, at *3.

Section 1104(a)(2) provides:

In the case of an eligible individual account plan (as defined in section 1107(d)(3) of this title), the diversification requirement of paragraph (1)(C) and the prudence requirement (only to the extent that it requires diversification) of paragraph (1)(B) is not violated by acquisition or holding of qualifying employer real property or qualifying employer securities (as defined in section 1107(d)(4) and (5) of this title).

29 U.S.C. § 1104(a)(2). In considering this provision, the *Moran* court noted that § 1104(a)(2) "contains two express limitations": 1) it "relaxes the duty of prudence only 'to the extent that it requires diversification'" and 2) "the exempt conduct is limited to the 'acquisition or holding' of 'qualifying employer securities' (or real property)." *Moran*, 2026 WL 235573, at *3. "In other words, the statute does not purport to exempt the management of other assets from prudence review simply because those assets are held within an ESOP." *Id.* Based on the statute's plain language, the *Moran* court found that § 1104(a)(2)'s statutory exemption did not bar the plaintiff's breach of the duty of prudence claim. *Id.* at *4. *See also Dawson-Roberts*, 2026 WL 1834788, at *2 (adopting the *Moran* court's understanding of § 1104(a)(2)).

The Court again agrees with the *Moran* and *Dawson-Roberts* courts. "Because § 1104(a)(2) is limited to diversification-based objections to the 'acquisition or holding' of 'qualifying employer securities' or real property, it does not, by its terms, immunize the management of non-employer-security assets such as the OIA from scrutiny under § 1104(a)(1)'s duty of prudence." *Id.* at *4. Therefore, Plaintiffs' claim will not be dismissed pursuant to § 1104(a)(2).

**D.    Remaining Arguments on the ESOP**

The Court finds that Defendants' remaining arguments about the administration of the WESC ESOP either give rise to factual disputes not appropriate for consideration here or are undermined by allegations in the TAC. First, whether the decision to preserve available funds in the WESC ESOP for future distributions was within the "range of reasonable judgments" that an ESOP fiduciary may make cannot be resolved at this stage. For now, the Court accepts as true Plaintiffs' allegations that using the ESOP to recycle shares was imprudent. (*See* Doc. 154 ¶¶ 53–64). Second, Defendants' argument that the TAC actually alleges that the WESC ESOP was prudently invested is unavailing. Per Defendants, Plaintiffs claim that the ideal asset allocation of the WESC ESOP would be "80% stocks" and 20% fixed income, cash equivalent, and inflation protection vehicles," and this is exactly how the WESC ESOP was invested: "80% or more in equities—namely, WESC: a risky, single employer security—with the remaining 20% invested conservatively as a hedge against the riskier equity tranche." (Doc. 166 at 12). However, a close review of the TAC shows that Plaintiffs are alleging that the OIA was imprudently invested, not the assets allocated to WESC securities.

**E.    Individual Defendants**

Defendants also argue that the TAC lacks sufficient factual allegations to show the Individual Defendants' fiduciary status. (*See* Doc. 166 at 19–21). However, Plaintiffs contend that Individual Defendants' positions gave them discretionary control over the administration of the ESOP. (Doc. 170 at 18–19).

ERISA allows for personal liability for fiduciaries under 29 U.S.C. § 1109(a). "An ERISA fiduciary includes anyone who exercises discretionary authority over the plan's management, anyone who exercises authority over the management of its assets, and anyone having discretionary authority or responsibility in the plan's administration." *Credit Managers Ass'n of S. Cali. v. Kennesaw Life and Acc. Ins. Co.*, 809 F.2d 617, 625 (9th Cir. 1987).

Here, Plaintiffs have alleged that the ESOP maintains a "governing committee" (the

"Committee"), which is currently comprised of the company's Board of Directors (the "Board"), and the Committee "directs the ESOP's trustee" on "how to invest ESOP assets." (Doc. 154 at ¶¶ 5–6). "There was previously a separate Committee, but its members were appointed by the Board, which was responsible for monitoring the Committee, and the Board exercised practical control over the ESOP's investments even during the period a separate Committee existed by directing the Committee." (*Id.* at ¶ 6). As to each of the six Individual Defendants, Plaintiffs claim that they "served on the Board / Committee" during the relevant time period "and in that capacity approved, facilitated, and failed to rectify the fiduciary breaches at issue." (*Id.* at ¶¶ 7–12).

Based on the foregoing, and although the allegations are a bit thin, Plaintiff has adequately alleged that Individual Defendants exercised discretionary authority over the WESC ESOP and the Committee. *See*, *e.g.*, *Marshall v. Northrop Grumman Corp.*, 2018 WL 1406703, at *5 (C.D. Cal. 2018) ("Plaintiffs allege that the Individual Defendants may have exercised discretionary authority over the Plan and the Committees during the class period. This is sufficient at this stage of the proceedings."); *Zavala v. Kruse-Western, Inc.*, 2021 WL 5883125, at *11 (E.D. Cal. 2021) (finding that the complaint adequately stated that the defendants were "functional fiduciaries" "by virtue of serving on the Administration Committee").

### F. Failure to Monitor and Co-Fiduciary Liability

Because the Court has found that Plaintiffs have stated a claim for a breach of the duty of prudence, Plaintiffs' failure to monitor and co-fiduciary liability allegations will not be dismissed as derivative. Finally, while the Court agrees that the failure to monitor allegations are cursory (*see* Doc. 154 at ¶¶ 24, 32, 65, 85), they are sufficient to maintain the claim under Rule 8's liberal standard.

Accordingly,

/ / /

/ / /

/ / /

**IT IS ORDERED** that Defendants' Motion to Dismiss the TAC (Doc. 166) is **DENIED**.

Dated this 7th day of August, 2026.

Honorable Diane J. Humetewa
United States District Judge