WO

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Daniel D Andrews, et al.,<br>Plaintiffs,<br>v.<br>Wilson Electric Services Corporation, et al.,<br>Defendants. | No. CV-24-00995-PHX-DJH<br>**ORDER** |

On October 20, 2025, Defendants Wilson Electric Services Corporation ("WESC"), Wilson Electric Services Corp. Plan Committee (the "Committee"), Todd Klimas ("Klimas"), Wesley McClure ("McClure"), Terry Oakes ("Oakes"), Scott Smith ("Smith"), Jeri Kendle ("Kendle"), and Rick Tometich ("Tometich") (collectively, "Defendants") filed a Motion to Decertify the Class (Doc. 156). Plaintiffs Daniel Andrews ("Andrews") and Matthew Baker ("Baker") (collectively, "Plaintiffs") filed an Opposition (Doc. 157) to Defendants' Motion, and Defendants then filed a Reply (Doc. 158).[1]

## I. Background

Plaintiffs have brought this action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq*. On behalf of themselves and other class members, Plaintiffs claim, in short, that Defendants imprudently invested their retirement funds. (*See generally* Doc. 154).

[1] Plaintiffs and Defendants sought to file certain Exhibits under seal and were granted permission to do so. (Doc. 155). The use of information filed under seal was necessary in resolving Defendants' Motion. Therefore, a redacted version of this Order will be filed on the public docket, and a sealed, unredacted version will be provided to counsel.

In 2005, WESC established an employee stock ownership plan (the "WESC ESOP") "to provide retirement benefits to employees." (*Id.* at ¶ 17). An employee stock ownership plan ("ESOP") is "a type of pension plan that invests primarily in the stock of the company." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 412 (2014). The WESC ESOP has two types of assets: 1) WESC stock and 2) other investments, known as the Other Investments Account ("OIA"). (Doc. 154 at ¶ 18). Between 2018 and 2022, the OIA averaged $11.2 million, but "Defendants kept the OIA funds invested exclusively in bank deposit and money market accounts during all or most of the subject period," yielding negligible returns. (*Id.* at ¶¶ 21, 25). Plaintiffs allege that these investments caused "the OIA funds [to] depreciate[] in real value, and the retirement savings of ESOP participants effectively shrunk." (*Id.* at ¶ 26).

Plaintiffs brought suit against Defendants on May 1, 2024 (*see* Doc. 1), and they now allege that "Defendants violated ERISA fiduciary standards set forth in 29 U.S.C. § 1104(a)(1) by failing to prudently invest the OIA in a manner consistent with the investment objectives of the ESOP and its participants." (Doc. 154 at ¶ 84).

On February 7, 2025, Plaintiffs filed a Motion to Certify Class (Doc. 82). Defendants filed a Response, stating that they did not oppose Plaintiffs' Motion, but they "reserve the right to move for decertification of the class and/or subclass should ongoing fact discovery and future expert discovery in this action provide appropriate grounds to do so." (Doc. 91 at 2). The Court then granted Plaintiffs' Motion to Certify Class (Doc. 119), and after an unopposed Motion for Reconsideration (Doc. 120) was granted to clarify a portion of the class definition, the following class (the "Class") was certified:

> All participants and beneficiaries of the Wilson Electric Services Corporation Employee Stock Ownership Plan since the date that is six years prior to the filing of this action.

(Doc. 121 at 2). Defendants now move to decertify the Class.[2] (*See* Doc. 156).

---

[2] When Defendants moved to decertify the Class, the Second Amended Complaint ("SAC") (Doc. 101) was the operative complaint, but following the Motion to Decertify, Plaintiffs were granted leave to file and did file their Third Amended Complaint ("TAC") (Doc. 154). While there was some alteration to the factual allegations, the TAC primarily removed Plaintiffs' claim under 29 U.S.C. § 1106(a) and no new claims were added. (*Compare*

Subsequently, Plaintiffs filed a Motion for Leave to File Sur-Reply in Opposition to Defendants' Motion to Decertify the Class (Doc. 150), and Defendants filed a Motion to Supplement the Motion to Decertify (Doc. 181). The Court recently denied both Motions (Doc. 194) and will now proceed to the merits of Defendants' arguments.

**II. Legal Standard**

"A district court may decertify a class at any time." *Rodriguez v. W. Publg. Corp.*, 563 F.3d 948, 966 (9th Cir. 2009). "Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982); *see also* Fed. R. Civ. P. 23(c)(1) ("An order that grants or denies class certification may be altered or amended before final judgment.").

"The Ninth Circuit has not affirmatively articulated the burden of proof for decertification." *MacDougall v. Am. Honda Motor Co., Inc.*, 2026 WL 1708907, at *4 (C.D. Cal. 2026). In *Marlo v. United Parcel Service, Inc.*, 639 F.3d 942 (9th Cir. 2011), the Ninth Circuit did clarify that, as to the class-decertification issue, the party seeking class certification still bears the burden of demonstrating that the requirements of Rule 23(a) and (b) are met. *Id.* at 947. Since *Marlo*, multiple district court in this Circuit have "concluded that the party seeking decertification bears the burden of showing that the elements of Rule 23 have not been established because 'decertification and modification should theoretically only take place after some change, unforeseen at the time of the class certification, that makes alteration of the initial certification decision necessary.' " *MacDougall*, 2026 WL 1708907, at *4 (quoting *In re Myford Touch Consumer Litig.*, 2018 WL 3646895, at *1 (N.D. Cal. 2018)); *see, e.g.*, *In re Apple iPod iTunes Antitrust Litig.*, 2014 WL 6783763, at *5 (N.D. Cal. 2014); *Kazda v. Aetna Life Ins. Co.*, 2023 WL 7305038, at *4 (N.D. Cal. 2023); *Maldonado v. Apple, Inc.*, 2021 WL 1947512, at *2 (N.D. Cal. 2021). These courts have determined that the defendant bears an initial burden of showing some changed circumstances or law, and once this burden is met, "the plaintiff

---

Doc. 101 *with* Doc. 154). And, importantly, the Class was not altered by the amendment. Therefore, the parties' briefing on decertification is still applicable to these circumstances.

must demonstrate that the class action should be 'maintain[ed]' under Federal Rule of Procedure 23." *Maldonado*, 2021 WL 1947512, at *2 (citing *Marlo*, 639 F.3d at 947).

Under Rule 23(a), a proposed class may proceed only if the following prerequisites are met:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Additionally, the party seeking certification must satisfy one of the categories outlined in Rule 23(b).[3] Class certification is only proper if a "rigorous analysis" demonstrates that the requirements of Rule 23 have been met. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011). The decision to grant or deny class certification is committed to the trial court's broad discretion. *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir. 2010).

## III. Discussion

As mentioned, the Court has already certified the Class to include: All participants and beneficiaries of the Wilson Electric Services Corporation Employee Stock Ownership Plan since the date that is six years prior to the filing of this action. (Doc. 121 at 2). Presently, Defendants argue that the Class should be decertified because it does not meet the commonality or adequacy requirements under Rule 23(a).

### A. Commonality

To meet the commonality requirement, there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). In other words, "[t]heir claims must depend upon a common contention of such a nature that it is capable of classwide resolution[.]" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

---

[3] Here, Plaintiffs successfully sought certification under Rule 23(b)(1)(A), (b)(1)(B), (b)(2), and (b)(3). (*See* Doc. 119 at 10–15). Defendants do not challenge class certification under any of the Rule 23(b) requirements. (*See generally* Doc. 156). So, for brevity's sake, the mandates of the various Rule 23(b) provisions have been omitted.

Defendants first contend that commonality is lacking because "[a]n individualized, fact-intensive inquiry of virtually all ESOP participants is necessary to determine whether they had sufficient knowledge of the relevant facts such that their claims are time barred under ERISA's statute of limitation[.]" (Doc. 156 at 11). On the other hand, Plaintiffs maintain that they have demonstrated common questions such as "(1) were Defendants acting as fiduciaries; (2) did Defendants breach their fiduciary duties by failing to prudently invest the ESOP's OIA; and (3) what is the measure of the resulting losses." (Doc. 157 at 8). And Plaintiffs argue that "a potential 'actual knowledge' statute of limitations defense" does not bar class certification in an ERISA case. (*Id.* at 9).

Plaintiffs further note, and the Court agrees, that "Defendants' challenge to commonality rests entirely on documents within their own possession[.]" (Doc. 157 at 9). Defendants' argument relies on annual account statements, disclosures, and the WESC ESOP's Form 5500s. (*See* Doc. 156 at 11–15). All of the foregoing documents and information would have been in Defendants' possession throughout the course of this litigation. So, there is no reason why Defendants could not have raised this issue in response to Plaintiffs' class certification motion. As to lack of commonality, Defendants have not met their initial burden of demonstrating any changed circumstance in fact or law that merits revisiting the commonality requirement. *See*, *e.g.*, *Garcia v. Schlumberger Lift Solutions*, 2024 WL 3385838, at *10 (E.D. Cal. 2024) ("Undersigned concludes that the post-certification authority Defendants advance in support of decertification does not present a sufficiently changed circumstance warranting decertification.").

But even assuming they have met their burden, Defendants' statute of limitations argument does not defeat commonality. Defendants' statute of limitations argument is speculative, and they have provided no binding authority supporting the premise that the possibility some class members claims might be time barred warrants decertification. *In re Myford*, 2018 WL 3646895, at *2 (recognizing that the adjudication of individualized affirmative defenses typically does not defeat predominance).

Instead, Defendants rely, primarily, on *Hensiek v. Bd. of Directors of Casino Queen*

*Holding Co., Inc.*, 2024 WL 773633, at *9–12 (S.D. Ill. 2024) to support their argument that individualized statute of limitations issues preclude class certification. However, not only is *Hensiek* not binding on the Court, but it is also distinguishable from the circumstances presented here. In *Hensiek*, the plaintiffs' claims were filed outside of ERISA's applicable statute of limitations, so they relied on ERISA's "fraud or concealment" tolling provision, under 29 U.S.C. § 1113, to make their claims timely. This means, unlike here, the *Hensiek* plaintiffs were tasked with demonstrating that ERISA's "fraud or concealment" exception applied. Consequently, the *Hensiek* court concluded that "whether or not each Plaintiff's claims would be properly extended under § 1113's 'fraud or concealment' provision will require some form of individualized inquiry, likely resulting in an array of possible answers, regardless of whether Defendants' actions were fraudulent," noting that the plaintiffs' claims relied "on a variety of alleged misstatements, both written and oral, occurring at different times with different variations, and accessed or attended by different employees[.]" *Id.* at *11–12. This is not the case here as Plaintiffs have raised no tolling argument based on fraud or concealment, so *Hensiek* is not persuasive to any lack of commonality.

"The existence of a statute of limitations issue does not compel a finding that individual issues predominate over common ones." *Williams v. Sinclair*, 529 F.2d 1383, 1388 (9th Cir. 1975); *see also Coleman through Bunn v. D.C.*, 306 F.R.D. 68, 87 n.9 (D.D.C. 2015) (noting that statute of limitations defenses rarely defeat class certification) (citing Newberg on Class Actions § 4:57 (5th ed. 2014)). And there is, otherwise, no showing that the common questions identified in the Court's class certification Order (*see* Doc. 119 at 6–7) are not still universal to all class members. Thus, the Class will not be decertified for lack of commonality.

**B. Adequacy of Representatives**

The fourth requirement assessed by Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requires that (1) named plaintiffs and their counsel have no conflicts of interest with other

class members and (2) named plaintiffs and their counsel prosecute the action vigorously on behalf of the class. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015). Defendants argue that the Class fails the adequacy requirement because the lead Plaintiffs' claims are untimely and because the lead "Plaintiffs seek to impose their preferred OIA asset allocation on all ESOP participants, regardless of whether they agree with [named] Plaintiffs' risky, anomalous investment approach." (Doc. 156 at 2). They raise further arguments, going to the adequacy prong, about lead Plaintiffs' prior actions, conduct during these proceedings, and involvement in the litigation. (*See id.* at 21–22).

Unlike the arguments presented above, these contentions incorporate information obtained during discovery, such as Plaintiffs' depositions, that was not in Defendants' possession at the time of the original Motion to Certify and Response to it. (*See*, *e.g.*, Docs. 156-3, 156-4). The Court will therefore assess whether information uncovered in discovery has so changed the circumstances that the Class should be decertified.

**1. ERISA Statute of Limitations**

When fiduciaries breach their duties to manage a plan prudently and solely in the interests of participants and their beneficiaries, ERISA enables plan participants to sue for relief. *See* 29 U.S.C. §§ 1104(a), 1109(a), 1132(a). As set out in § 1113, such an action must be filed before the earlier of–

> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or
>
> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation

29 U.S.C. § 1113.[4]

"Actual knowledge," under § 1113(2), requires that the plaintiff's knowledge "be more than 'potential, possible, virtual, conceivable, theoretical, hypothetical, or nominal.'" *Intel Corp. Inv. Policy Comm. v. Sulyma*, 589 U.S. 178, 185 (2020) (quoting Black's Law

[4] Provisions relating to fraudulent concealment in §1113 are not relevant here as Plaintiffs have raised no fraudulent concealment allegations.

Dictionary 53 (4th ed. 1951)). §1113(2) "requires more than evidence of disclosure alone." *Id.* at 186. While the disclosure of all relevant information is relevant to determining whether knowledge of that information existed, to meet the "actual knowledge" requirement, "the plaintiff must in fact have become aware of that information." *Id.* at 186–87. "This knowledge is distinguished from lower knowledge thresholds like presumed, implied, or constructive knowledge, where the law will sometimes impute knowledge of facts to a person when a reasonably diligent person would have (or should have) learned them." *Guenther v. Lockheed Martin Corp.*, 972 F.3d 1043, 1054 (9th Cir. 2020).

To demonstrate actual knowledge, "a defendant's burden is to show 'the plaintiff [was] actually aware of the facts constituting the breach, not merely that those facts were available to the plaintiff,' as well as something 'extra,' meaning that the plaintiff 'was actually aware of the nature of the alleged breach.' " *Id.* (quoting *Sulyma v. Intel Corp. Inv. Policy Comm.*, 909 F.3d 1069, 1075–76 (9th Cir. 2018)). "[A]ctual knowledge can be proved through 'inference from circumstantial evidence.' " *Sulyma*, 589 U.S. at 189.

**2. Application of Statute of Limitations to Lead Plaintiffs**

Defendants argue that both Andrews and Baker's claims are time-barred and therefore they are inadequate class representatives. (Doc. 156 at 16–17). And courts have acknowledged that a plaintiff with a time-barred claim cannot serve as a class representative. *See*, *e.g.*, *Burton v. Mt. W. Farm Bureau Mut. Ins. Co.*, 214 F.R.D. 598, 609 (D. Mont. 2003); *Plumlee v. Pfizer, Inc.*, 664 Fed. App'x. 651, 654 (9th Cir. 2016).

Before proceeding to the actual knowledge determination, courts first "isolate and define the underlying violation upon which [the] plaintiff's claim is founded." *Sulyma*, 909 F.3d at 1072–73 (internal quotations and citation omitted). Here, the alleged violation is Defendants' failure to invest the OIA in a manner consistent with the WESC ESOP's objectives by adopting an all-cash investment strategy. (*See generally* Doc. 154). With this in mind, the Court will consider whether each lead Plaintiff had actual knowledge of the alleged breach over three years before the filing of this case.

**a. Plaintiff Andrews**

To show Andrews's actual knowledge of Defendants' alleged breaches, Defendants point to an email exchange between Andrews and WESC's CFO. In January 2021, Andrews and WESC's CFO engaged in a discussion about the ESOP, particularly concerning the ESOP's distribution schedule. (*See generally* Doc. 156-4). Andrews, in his email correspondence, states [redacted] (Doc. 156-4 at 3). He proceeds to pose several questions on vesting and distributions under the WESC ESOP. (*See id.*). Responding to Andrews's inquiries, the CFO begins by saying that [redacted] (*Id.* at 2). She continues to explain that [redacted] (*Id.*)

Without more, the Court is unable to say that Andrews acquired actual knowledge as a matter of law. Defendants rely exclusively on the above email exchange. (*See* Doc. 156 at 16–17). The CFO's email does hint that the WESC ESOP is focused on ensuring that there is cash available for retirement disbursements. However, the Court agrees with Plaintiffs that the email conversation was primarily centered around retirement distribution questions. (*See* Doc. 156-4). Moreover, in the same email, the CFO [redacted]. This description would lead one to believe the WESC ESOP was being managed in a way that would augment employee accounts. The Court finds that this email exchange is not sufficient to meet the heightened standard of actual knowledge. Defendants provide no other circumstantial evidence, such as any action Andrews took as a result of the CFO's

email, to strengthen their argument. The Court also has no knowledge as to whether Andrews reviewed any of WESC's financial disclosures and, if he did, what he understood from them. So, Defendants have not demonstrated that Andrews acquired actual knowledge outside of the three-year limitation period.

**b. Plaintiff Baker**

As to Baker, Defendants assert that Baker testified that he reviewed his 2018 and 2019 account statements, which included a column labeled "Cash." (Doc. 156 at 17). An employee's "Personal Statement of Participation" is comprised of four columns "Cash," "Number of Shares," "Dollar Value of Shares," and "Total Value," and the rows display an employee's account balance from the prior year as well as their share of the current years contribution, income/adjustments, stock dividends, forfeitures, and shares sold and repurchases, culminating in the current year's total account values. (*See*, *e.g.*, Doc. 130-5). But Baker also testified that he [redacted] (Doc. 157-2 at 3). Defendants similarly identify email correspondence between Baker and WESC's CFO, discussing issues with a registration. (*See* Doc. 156-2). The exchange concludes with Baker stating that [redacted] (*Id.* at 2). However, Baker has said that [redacted] (*See* Doc. 157-2 at 12).

On this record, Defendants have not demonstrated that Baker had actual knowledge of Defendants' alleged breach of its fiduciary duty more than three years before this action was filed. In *Guenther*, the Ninth Circuit determined that the plaintiff did acquire actual knowledge of the alleged breach outside the three-year window. *Guenther*, 972 F.3d at 1055. There, the initial complaint was filed on November 8, 2010; however, the plaintiff's deposition confirmed that he understood the nature of the alleged breach upon receipt of a

November 2006 letter as he testified that it was "obvious" the defendant had contradicted itself from a prior communication and he was no longer able to participate in the plan. *Id.* at 1050, 1055. The conclusion that the plaintiff had actual knowledge was strengthened by further circumstantial evidence such as the plaintiff ceasing to check his account online after the November 2006 letter and reaching out to various human resources representatives immediately after receiving the same letter. *Id.* at 1056.

The evidence attempting to show actual knowledge here is quite thin compared to that in *Guenther*. The fact that Baker reviewed his account statements with a column labeled "Cash" with no further detail is insufficient to establish actual knowledge. The same goes for Baker attaching the Form 5500 to his email sent to the CFO. Though it is clear he downloaded the document, nothing in the record establishes that Baker actually read the Form 5500 when he sent it. *See Walsh v. Bowers*, 561 F. Supp. 3d 973, 995 (D. Haw. 2021). Moreover, the chart that Defendants claim would have imparted actual knowledge was the last page of thirteen pages of financial statements, and it is therefore reasonable to believe that Baker did not understand that disclosures included an end-of-year schedule of assets. In all, Defendants have not demonstrated that Baker possessed actual knowledge over three years prior to the filing of this case.

### 3. Preferred OIA Investment Strategy

Defendants' argument that Plaintiffs cannot adequately represent the class because "Plaintiffs' risky, equity-heavy investment approach is an outlier that is incompatible with ESOP participants who prefer a more conservative strategy protecting against downside risk" is unavailing. (Doc. 156 at 18). Plaintiffs have asserted that Defendants breached their duty of prudence by investing all OIA assets in bank deposits and cash equivalents during the subject period. Plaintiffs' personal investment strategies or preferences are not a factor in resolving whether the OIA was imprudently invested. Moreover, Defendants' arguments on this subject venture into arguments concerning the merits of Plaintiffs' breach of fiduciary duty claim (*see* Doc. 156 at 20), but a motion for class decertification is not the appropriate point at which to resolve the merits of a plaintiff's claim. *See Hanon*

*v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir. 1992); *Marlo v. United Parcel Serv., Inc.*, 251 F.R.D. 476, 480 n.2 (C.D. Cal. 2008), *aff'd*, 639 F.3d 942 (9th Cir. 2011) ("When considering class certification, a court should not weigh the evidence or otherwise evaluate the merits of a plaintiff's class claim.").

**4. Legal Infractions and Candor in these Proceedings**

Lastly, Defendants argue that Plaintiffs' "historical disregard for the legal system and lack of candor in this case is yet another reason they are not adequate Class representatives." (Doc. 156 at 22). First, the Court is perplexed by Defendants' argument that Plaintiffs' minor legal infractions make them unsuitable class representatives. Infractions relating to a traffic citation and racing dirt bikes that occurred ten or forty years ago do not show examples of dishonesty, do not directly relate to this litigation, and warrant no further discussion. (Doc. 156-2 at 7–8; Doc. 130-22); *Harris v. Vector Mktg. Corp.*, 753 F. Supp. 2d 996, 1015 (N.D. Cal. 2010) ("There is 'inadequacy only where the representative's credibility is questioned on issues directly relevant to the litigation or there are confirmed examples of dishonesty, such as a criminal conviction for fraud.' ") (citation omitted).

Second, Defendants claim that an omission in Andrews's employment history and withholding a negative Google review that he posted also demonstrate inadequate representation. (Doc. 156 at 21–22). "[T]o result in a finding of inadequacy, attacks on the credibility of the class representative must be 'so sharp as to jeopardize the interests of absent class members.' " *Del Valle v. Glob. Exch. Vacation Club*, 320 F.R.D. 50, 59 (C.D. Cal. 2017) (quoting *Harris*, 753 F. Supp. 2d at 1015). Concerning the employment history, Plaintiffs state that Andrews "explained in his deposition that after filling available space in his interrogatory answer with his employment history dating back to approximately 2008, he did not include information about older jobs." (Doc. 157 at 18; Doc. 156-2 at 16–17, 19). Andrews's employment prior to 2008 is not relevant to these proceedings, and the omission cannot reasonably be seen to rise to a level of dishonesty. The same can be said for the Google review. Andrews testified that he did not believe the review was responsive

to the relevant interrogatory, but he supplemented his interrogatory answer in addition to answering questions about the review in his deposition. (Doc. 156-2 at 32–34; Doc. 138-4 at 3). And Defendants have not demonstrated the Google review's relevance.

Third and finally, Defendants contend that Andrews is not capable of adequately monitoring class counsel such that this lawsuit is controlled solely by class counsel. (Doc. 156 at 22). While "a representative may not be adequate in extreme cases where a plaintiff has little involvement in the case other than furnishing his name as a plaintiff, [] this is not one of those cases." *Stern v. DoCircle, Inc.*, 2014 WL 486262, at *6 (C.D. Cal. 2014). Having reviewed the relevant portions of testimony, Andrews clarified that he along with Baker would decide what settlement to accept with consideration to class counsel's recommendations, which is an appropriate role for counsel and not a cession of control. (*See* Doc. 130-3 at 37). Defendants have offered up no other indication that Andrews nor Baker are not sufficiently performing their roles as class representatives. Thus, the adequacy requirement of Rule 23(a) is still met.

In sum, Defendants have not demonstrated any new circumstances that warrant decertifying the Class, and Plaintiffs have still adequately shown that the challenged Rule 23(a) factors are met.

Accordingly,

**IT IS ORDERED** that Defendants' Motion to Decertify the Class (Doc. 156) is **DENIED**.

**IT IS FURTHER ORDERED** that any dispositive motions, including *Daubert* motions, are due **within forty-five (45) days of this Order**.

Dated this 14th day of August, 2026.

Honorable Diane J. Humetewa
United States District Judge